UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JACQULYNE PERRIEN,<br><br>        Plaintiff. | **DOCKET NO.: CV-21-4443** |
|    - against - | |
| CITY OF NEW YORK, NEW YORK CITY POLICE<br>DEPARTMENT, POLICE OFFICER NICHOLAS, in his<br>individual and official capacity, DETECTIVE<br>CHRISTOPHER MORANO, in his individual and official<br>capacity, POLICE OFFICERS BRIAN ORTIZ and ORLANDO<br>INSIGNARES in their individual and official capacities, | **AMENDED<br>COMPLAINT** |
|         Defendants. | ***Jury Trial is Demanded*** |

Plaintiff, JACQULYNE PERRIEN, her attorneys, the LAW OFFICES OF FREDERICK K.

BREWINGTON, as and for her AMENDED COMPLAINT as of right against the Defendant, states

and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for money damages against the CITY OF NEW YORK, NEW

YORK CITY POLICE DEPARTMENT, POLICE OFFICER NICHOLAS, DETECTIVE

CHRISTOPHER MORANO AND POLICE OFFICERS BRIAN ORTIZ and ORLANDO

INSIGNARES for committing acts under color of law and depriving Plaintiff of rights secured by

the Constitution and laws of the United States and the State of New York. Plaintiff alleges that

Defendants participated in the use of excessive and unreasonable force, abuse of process, failure to

intervene, unlawful seizure of persons and property, denial of due process, retaliation, failure to

supervise, failure to report abuse and violations of Plaintiff's rights, failure to provide timely and

adequate medical care and municipal violations upon Plaintiff, JACQULYNE PERRIEN, on October

16, 2018, and continuing to date.

2.      On October 16, 2018 and continuing to date, Defendants CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, POLICE OFFICER NICHOLAS, DETECTIVE CHRISTOPHER MORANO AND POLICE OFFICERS ORTIZ and INSIGNARES under color of state law, intentionally and wilfully subjected Plaintiff to, *inter alia,* use of excessive and unreasonable force, aiding and abetting the use of unreasonable force, abuse of process, failure to intervene, unlawful seizure of persons and property, denial of due process, retaliation, failure to supervise, failure to report abuse and violations of Plaintiff's rights, failure to provide timely and adequate medical care and municipal violations.

## JURISDICTION

3.      This action is brought pursuant to 42 U.S.C. § 1983, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, and under the Constitution, statutes and common law of the State of New York. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343 (3) and (4) and the aforementioned statutory and constitutional provisions. Plaintiff further invokes the pendent jurisdiction of this Court, pursuant to 28 U.S.C.A. § 1367, to hear and decide any and all claims arising under state law CPLR §§ 215(1) and 215(8)(a).

4.      Venue is set within the United States District Court for the Eastern District of New York in that the Defendant CITY OF NEW YORK is located within, and the events giving rise to the claim occurred within, the boundaries of the Eastern District of New York.

## PARTIES

5.    At all times relevant hereto, Plaintiff JACQULYNE PERRIEN (hereinafter Plaintiff or MS. PERRIEN) was and is a citizen of the United States, and resided in the State of New York.

6.    At all times relevant hereto, Defendant CITY OF NEW YORK (hereinafter "CITY") is a city within the State of New York. At all times relevant hereto, Defendant CITY is responsible for the maintaining, funding and operating Defendant NEW YORK CITY POLICE DEPARTMENT, and the functions, employees, agents and personnel within.

7.    At all times relevant hereto, Defendant NEW YORK CITY POLICE DEPARTMENT (hereinafter NYPD)is an agency within Defendant CITY OF NEW YORK, and was and is a law enforcement agency. At all times relevant hereto, Defendant NYPD maintains, operates and staffs the 105th Precinct located at 92-08 222nd Street, Queens Village, NY 11428.

8.    At all times relevant hereto, Defendant POLICE OFFICER NICHOLAS (whose first name is not yet known to Plaintiff) (hereinafter OFFICER NICHOLAS or NICHOLAS), sued here in his individual and official capacity, was and is an employee of Defendant NYPD, duly appointed and acting as Police Officer in the 105th Precinct and was an agent, servant and/or employee of Defendant NYPD, acting in the course and scope of his employment as such and in furtherance of the interests and business of his said employer. At all times relevant hereto, NICHOLAS was and is a state actor.

9.    At all times relevant hereto, Defendant DETECTIVE CHRISTOPHER MORANO (hereinafter OFFICER MORANO or MORANO), sued here in his individual and official capacity, was and is an employee of Defendant NYPD, duly appointed and acting as Detective in the 105th Precinct and was an agent, servant and/or employee of Defendant NYPD, acting in the course and

3

scope of his employment as such and in furtherance of the interests and business of his said employer. At all times relevant hereto, MORANO was and is a state actor.

10.     At all times relevant hereto, Defendants POLICE OFFICERS  BRIAN ORTIZ AND ORLANDO INSIGNARES, sued here in their individual and official capacities, were and are employees of Defendant NYPD, duly appointed and acting as Police Officers in the 105th precinct and were agents, servants and/or employees of Defendant NYPD, acting in the course and scope of their employment as such and in furtherance of the interests and business of their said employer. At all times relevant hereto, DOES were and are state actors.

11.     At all times relevant hereto, the individual Defendants were acting under color of state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of Defendants CITY, NYPD and of the State of New York.

## FACTUAL ALLEGATIONS

12.     On or around October 16, 2018 at 1a.m., Ms. Perrien was walking to a friend's house on 217th Street, near Springfield Boulevard and Hollis Boulevard, in Queens, NY. As she crossed from the sidewalk into the crosswalk, she was suddenly violently hit by a car and thrown to the ground.

13.     After Ms. Perrien realized that she was hit by a car and in pain, she dialed 911 on her phone, which was damaged when she was struck, for an ambulance. The ambulance arrived shortly after to render medical treatment and transport her to Jamaica Hospital.

4

14.     Once Ms. Perrien arrived to Jamaica Hospital at or around 2 a.m., she was placed in the emergency room. During this time, Ms. Perrien was screaming in pain and agony. In order to determine the source of her pain, the medical staff ordered X-rays of her left femur, left knee and pelvis. From the X-rays, the medical staff determined that Ms. Perrien's left femur was fractured and her pelvis was fractured in multiple places. This meant Ms. Perrien would require immediate surgery to repair her left femur, and thus the medical staff started prepping her for surgery.

15.     After the medical staff finally determined the extent of Ms. Perrien's injuries, they finally gave Ms. Perrien the strong pain medication she needed for the injuries from which she was suffering for a considerable period. Ms. Perrien also required blood transfusions which took a considerable long time for her to receive. Ms. Perrien was in and out of consciousness until her surgery because of the strong pain medication, great and increasing underlying pain and the substantial loss of blood.

16.     It is during this state of pain, medicine influence and bare consciousness that a Police Officer from the 105th Precinct entered her room. While being in and out of lucidness and preparing for massive surgery, the Police Officer intruded and asked Ms. Perrien questions for a police report. Ms. Perrien to this day does not remember what she was asked, what she said or what the Police Officer said during this police report since she was experiencing mind-bending pain and was semi-conscious at the time while getting ready for surgery.

17.     As best as she could remember, after being asked the questions by the Police Officer, the Police Officer then told Ms. Perrien that they had a warrant for her arrest. Upon information and belief, the Police Officer was charging her with disorderly conduct. The Police Officer proceeded to handcuff Ms. Perrien to her hospital bed. From what Plaintiff recalls, she had to go into surgery

while being handcuffed to her bed.

18.     On or around October 16, 2018 at 9:00 p.m., Ms. Perrien then proceeded to undergo orthopedic surgery on her left femur. The surgeons placed a rod, pins and screws to repair her broken left femur. Police maintained guard over Plaintiff and she remained in their full care and custody.

19.     After Ms. Perrien made it safely out of surgery, the 105th Precinct Police Officers switched with the 103rd Precinct. In keeping Plaintiff in custody and preventing her from having her liberty, upon information and belief, it is Police Officers from the 103rd Precinct who remained with Ms. Perrien during her recovery. Following her surgery, Ms. Perrien remained in Jamaica Hospital to heal and recover from her massive surgery for five days.

20.     At or around October 22, 2018 at 1:30 p.m., just over 5 days after having a rod, pins and screws placed in Ms. Perrien's leg, two Police Officers from the 105th Precinct arrived back at the hospital to take over custody of Ms. Perrien and switch with the Officers from the 103rd Precinct. The two Police Officers told Ms. Perrien that they wanted to bring her to the 105th Precinct that very same day to process her charges. Ms. Perrien objected and made known her serious post-surgical medical condition, but her objections were ignored.

21.     When the physician from Jamaica Hospital discharged Ms. Perrien on October 22, 2018 at or around 1:30pm, they prescribed her, along with pain medicine, to do "weight bearing as tolerated" and to use a "rolling walker for ambulation."

22.     Ms. Perrien was then put in a wheelchair and wheeled to the front of the hospital by a medical staff. Seeing her obvious condition, these two Police Officers from the 105th Precinct were very courteous and helped Ms. Perrien get into the police vehicle. The Police Officers then drove Ms. Perrien to the 105th Precinct. Clearly aware of her medical condition and physical limitations, the

6

Police Officers then physically helped Ms. Perrien get out of the police car and into the police station which was necessary due to her obvious inability to walk properly and clear level of pain she was experiencing.

23.     After Ms. Perrien arrived at the 105th Precinct, the Police Officers let Ms. Perrien know that she was going to be brought to Queens Central Booking to process her charges. The same two Police Officers then brought Ms. Perrien to the front of the building to wait for the transportation van. The Police Officers, acting in a compassionate and caring fashion, even brought a chair for Ms. Perrien to sit while she waited since they knew she could not wait for the van standing up the whole time.

24.     After waiting for some time, the transportation van finally arrived to serve as transport to Queens Central Booking. Two different Police Officers arrived with the van and were to serve as the Officers who would take custody of Ms. Perrien. They made themselves known to Ms. Perrien as the Officers now in charge of her custody and were Defendants ORTIZ and INSIGNARES. Officers ORTIZ and INSIGNARES never made their names or badge numbers known to Ms. Perrien.

25.     When Officers ORTIZ and INSIGNARES arrived in front of Ms. Perrien, they demanded Ms. Perrien to get into the van by herself. Ms. Perrien explained that she had just undergone surgery a few days prior and could not walk on her left leg. Ms. Perrien told Officers ORTIZ and INSIGNARES that if they needed proof they could read her medical file.

26.     Officers ORTIZ and INSIGNARES told her that they did not believe her and commanded her to get into the van. Ms. Perrien explained again that she could not walk on her leg because of her injury and surgery. Officers ORTIZ and INSIGNARES then told her that they did

7

not believe her because she did not have a visible cast. Ms. Perrien tried to explain that she had a rod with pins and screws placed in her leg, but again they did not believe her, and made absolutely no effort to verify Ms. Perrien's condition. Attempting to avoid causing herself danger and to prove she could not walk on both legs, Ms. Perrien tried to hop on her good leg. Officers ORTIZ and INSIGNARES laughed at her attempt and again told her they did not believe her that she had a serious medical condition. Again, Ms. Perrien implored them to look at her medical records for proof, but again they refused.

27. Ms. Perrien repeatedly pleaded to Officers ORTIZ and INSIGNARES that she was recovering from surgery and could not get into the van by herself. Suddenly, Officers ORTIZ and INSIGNARES grabbed Ms. Perrien on either side of her body, lifted her up, and threw her face first into the back of the van. Ms. Perrien went sprawling and screamed in anguish and pain as she hit the van and felt a click in her leg. Ms. Perrien immediately felt extreme pain, anger, confusion, physically and emotionally hurt, and degraded from being treated in this inhumane and abusive manner. This unreasonable use of force and abusive act by Officers ORTIZ and INSIGNARES magnified and intensified the pain she was already feeling post-surgery and shot torturous agony up and down her leg, which reverberated through her body.

28. In addition to injuring Ms. Perrien's healing leg, Officers ORTIZ and INSIGNARES then put a handcuffed man in the back of the van to be transported alongside Plaintiff. Being transported alone in the back of a van with an unknown man made Ms. Perrien feel extremely uneasy, vulnerable, nervous and unsafe. She tried to reassure herself continuously by reminding herself that they were both handcuffed. Nonetheless, Ms. Perrien kept as much distance as she could between her and the male prisoner to protect herself as she was incapable of protecting herself in

case anything were to happen to her.

29.     The ride to Queens Central Booking filled Ms. Perrien with pain, fear and shock that grew worse with every bump and every turn.

30.     Once the transportation van arrived to Queens Central Booking, Ms. Perrien was in extreme pain and in desperate need of help to get out of the van since she still could not walk on her left leg. Instead of helping her, Officers ORTIZ and INSIGNARES grabbed Ms. Perrien by the side of her arms and actually dragged her out of the van, up to the front of the building and inside. This act caused so much pain that Plaintiff continued to plead for help and mercy.

31.     Once inside the building, Officers ORTIZ and INSIGNARES continued to drag Ms. Perrien around to get her fingerprints and picture taken. Once the photos and prints were taken, Officers ORTIZ and INSIGNARES dragged Ms. Perrien to the metal detector. When Ms. Perrien hobbled through the metal detectors on her one good leg, the alarms went off. Officers ORTIZ and INSIGNARES asked Ms. Perrien if she had anything on her. Ms. Perrien explained again that she had just undergone surgery and that she had a rod, pins and screws in her left leg.

32.     It is at this point where Officers ORTIZ and INSIGNARES acknowledged the abuses and violations they had just committed. Officers ORTIZ and INSIGNARES audibly cursed when they realized Ms. Perrien was telling the truth the whole time about still recovering from massive leg surgery. Officers ORTIZ and INSIGNARES immediate reactions to curse when they realized that they had willfully violated Plaintiff and all of the proper procedures they had violated, served to illustrate that they were aware of their wrongdoings and that such a violation was well-established. This admission demonstrates that Officers ORTIZ and INSIGNARES knew they had committed acts that were violative of Ms. Perrien's rights and that their actions were contrary to well-established

rules, regulations and law.

33.     Officers ORTIZ and INSIGNARES then brought Ms. Perrien to the EMT office. When the EMT medic realized what Officers ORTIZ and INSIGNARES had done to Ms. Perrien, he yelled at them in outrage and disbelief. The EMT medic expressed his disgust of the actions of Officers ORTIZ and INSIGNARES and said he could not believe what they had done and that he had never seen someone do something like this. There was nothing the EMT medic attempted to do to assist Plaintiff or to provide repair or aid to the damage caused by Officers ORTIZ and INSIGNARES. Remarkably, Ms. Perrien, who was in obvious need of medical attention, was not taken to the hospital.

34.     Instead, Ms. Perrien was then placed in a small holding cell for approximately two hours where she waited in agony, pain and misery before seeing a judge.

35.     After waiting agonizingly in the holding cell, Ms. Perrien was finally able to speak to a legal advisor and tell the advisor what happened to her and about the pain she was greatly suffering from. The legal advisor listened to Ms. Perrien. Ms. Perrien was then brought to the Queens County Criminal Court to a courtroom to be heard before a judge. Her attorney then told the judge about Ms. Perrien being fresh out of surgery and feeling pain in her leg. The judge released Ms. Perrien and agreed that they should reconvene at another time once Ms. Perrien had time to stop the pain and to heal.

36.     Despite their knowledge of Plaintiff's needs and condition, then grabbed Ms. Perrien's arms again and picked her up to drag her out of the courtroom. As one of Officers ORTIZ or INSIGNARES the opened the swinging door to exit the courtroom, he let it close and slam on Ms. Perrien's leg on purpose. When the door slammed on Ms. Perrien's leg, she immediately screamed

in pain and agony. The Court Officer, who watched either Officer ORTIZ or INSIGNARES purposely let the door slam closed on Ms. Perrien's injured leg, immediately yelled at Officers ORTIZ and INSIGNARES to leave Ms. Perrien alone. Thus, Officers ORTIZ and INSIGNARES were forced to leave the building and instead two Court Officers took over Ms. Perrien's care for her safety.

37.     Then, the two Court Officers helped Ms. Perrien to the front of the Queens County Criminal Court building. One of the Court Officers left to call the ambulance to pick up Ms. Perrien to go back to the hospital. The ambulance then came shortly after and picked up Ms. Perrien. The ambulance brought Ms. Perrien back to Jamaica Hospital.

38.     On October 22, 2018 at or around 8:30pm, seven hours after being previously discharged the same day, Ms. Perrien arrived back at Jamaica Hospital. Ms. Perrien was in so much pain that she could not stand it or stand up at all. She felt lightheaded as though going into shock, and in-and-out of consciousness again. Ms. Perrien explained to the medical staff what had occurred to her and her leg by the Police Officers. The medical staff ordered another X-ray of her injured leg to see if anything was wrong with Ms. Perrien's leg. From the X-ray, the surgeon observed that Ms. Perrien's femur was in the "approximate alignment" that her knee and femur should be in after surgery. But since it was still too early after surgery, the surgeon said there was nothing at the moment they could do. The surgeon said that after the abuses she suffered that Ms. Perrien needed to wait and see whether it would heal properly or not, and that they could not perform surgery on her leg until one year after the earlier surgery.

39.     On October 23, 2018 at or around 6:30am, Ms. Perrien was forced to leave Jamaica Hospital in pain and without any other medical choice. This time, as part of her discharge plan, the

11

medical staff showed Ms. Perrien how to use crutches which completely relieved her injured leg from bearing weight. The medical staff also reiterated the discharge plan prescribed to her the previous day to do "weight bearing as tolerated" to the extent she was able to.

40.     During the following months, Ms. Perrien would continue to use crutches, canes and a walker to move around. She engaged in physical therapy at least twice a week for months. Despite these methods to alleviate pain in her leg, Ms. Perrien's pain in her leg was constant.

41.     Feeling constant pain and limited progress in healing, Ms. Perrien knew something was wrong with her leg and went to several hospital for second opinions, such as Bellevue Hospital and Mount Sinai Beth Israel. But, upon information and belief, both hospitals were unwilling to perform the second surgery on her leg while it was still under one year since her earlier surgery.

42.     Still suffering pain nine months later, finally on or around July 3, 2019, Ms. Perrien went to the NYU Orthopedic Surgery Fracture Clinic. Ms. Perrien told the medical staff about the pain she had been feeling in her left thigh and knee since October 2018. The medical staff decided to take an X-ray of Ms. Perrien's left leg and knee.

43.     After reviewing the X-rays, the resident on duty asked Ms. Perrien if anything had happened for her leg not to heal. Ms. Perrien explained to the medical staff what happened to her by Officers ORTIZ and INSIGNARES five days after surgery. At that point, the resident told her that she had a non-union fracture and would most likely need a second surgery. The orthopedic surgeon was brought in, who confirmed the resident's findings and gave Ms. Perrien a consultation about the surgery. The clinic promptly scheduled Ms. Perrien's surgery for the following week.

44.     On or around July 12, 2019, Ms. Perrien returned to the NYU Clinic for her surgery. As soon as she was admitted into the hospital, she was quickly prepped for surgery. After being

12

prepped for surgery, she was brought to the surgery room for her procedure. During surgery, the surgeon removed the same previously placed hardware, surgically refractured the femur, and pinned the femur together with a new nail and two screws.

45.     Ms. Perrien was released on the same day as her surgery with instructions to again only bear weight as tolerated.

46.     After her second surgery, Ms. Perrien required massive amounts of help from her aunt to conduct her daily life. Her aunt allowed Ms. Perrien to move into her apartment so she could take care of Ms. Perrien while she recovered and learned to walk again. Ms. Perrien required help with simple everyday tasks such as, but not limited to, walking, moving, grabbing things, showering, using the bathroom and any other task which required just minimal mobility. Ms. Perrien's aunt was generous in going out of her way to help Ms. Perrien with anything she needed. Her aunt also generously paid for an orthopedic bed and shower to accommodate Ms. Perrien's handicap, and paid for her food and cab fare. It took around a year and a half for Ms. Perrien to regain a limited level of independence after her second surgery and to be able to live without her aunt's aid.

47.     As successful as a second surgery could be expected to be, Ms. Perrien has taken years to heal from the additional injury and surgery she underwent on her left leg. As a matter of fact, Ms. Perrien's left femur is still healing. She continues to this day to go to physical therapy and follow-up on doctor appointments. Even two years after her second surgery, Ms. Perrien continues to undergo MRIs to figure out options to make the pain in her leg liveable. Because of the reinjury to her left femur caused by Officers ORTIZ and INSIGNARES, Ms. Perrien ended up losing 3 centimeters of mass on her left leg.

48.     Before the car accident, on June 13, 2018, Ms. Perrien took the Fire Department of New York Exam to start her career in the Fire Department of New York. She passed the exam and it was expected of her to take the physical exam by June 2019. But due to the extensive pain she was still feeling in her left leg at that time, she was unable to take the physical exam, and missed her opportunity to be eligible for hiring by the Fire Department of New York.

49.     Later on, Ms. Perrien tried to revise the report she gave to the police officer while not lucid and being in and out of consciousness at Jamaica Hospital. On October 17, 2018, because of the pain caused by Officers ORTIZ and INSIGNARES, she is currently too scared to enter the Precinct. Instead, Ms. Perrien has called over and over again trying to contact an Officer who would listen. She finally received an answer to her phone calls after a month of trying. The Police Officer who answered, Officer NICHOLAS, told her rudely that she could not revise or amend her report and refused to provide her any assistance.

50.     On August 5, 2020, Ms. Perrien filed a formal complaint with the New York City Police Department about her mistreatment by Officers ORTIZ and INSIGNARES.

51.     On November 10, 2020, Detective Morano from the Internal Affairs bureau reached out to Ms. Perrien's attorney regarding the case. During the phone call, Ms. Perrien's attorney provided Detective Morano with ample information about the substantiality of the complaint.

52.     On January 13, 2021, Plaintiff's attorney sent Detective Morano the requested HIPAA Authorization forms.

53.     On January 29, 2021, a mere sixteen (16) days after the HIPAA forms were sent to Detective Morano, the Internal Affairs Bureau notified Ms. Perrien that an investigation had been conducted that determined there was "insufficient evidence" to prove her complaint, and they closed

14

the complaint file.

54.     Upon information and belief, sixteen (16) days is not enough time to send HIPAA forms to hospitals and receive information back. Thus, upon information and belief, Detective Morano and the Internal Affairs Bureau closed the complaint file without receiving or reviewing Ms. Perrien's medical files and reviewing all of the available evidence.

## AS AND FOR COUNT ONE
## 42 U.S.C. § 1983 - EXCESSIVE AND UNREASONABLE USE OF FORCE
## FOURTH AMENDMENT

55.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 54 of this Complaint with the same force and effect as though fully set forth herein.

56.     Defendants OFFICERS ORTIZ and INSIGNARES unlawfully and purposely seized and forcefully threw Ms. Perrien into the transportation van causing her to land on her injured leg, causing her excessive injury and pain, and deeply humiliating and frightening her by the inhumane treatment of Defendants.

57.     Defendants OFFICERS ORTIZ and INSIGNARES also unlawfully and excessively seized and dragged Ms. Perrien through and around Queens Central Booking, despite being in a fragile medical condition, causing her extensive pain and mental anguish.

58.     Further, Defendants OFFICERS ORTIZ and INSIGNARES unlawfully and purposely seized her body and allowed the court's swinging door to slam on Ms. Perrien's left leg, causing her excessive pain and agony at the site of her recovering injuries and further mental anguish from the treatment she was repeatedly attacked with by Defendants.

59.     The excessive and unreasonable use of force, wrongful seizure and other wrongful acts conducted against Plaintiff by the Defendants OFFICERS ORTIZ and INSIGNARES   was committed under color of law, customs, and statutes of the state of New York.

60.     Under color of law, the Defendants, and each one of them, deprived Plaintiff of her Fourth Amendment right from unlawful seizure, excessive and unreasonable use of force and authority by wrongfully throwing her into the van, dragging her around and causing a door to slam near her surgical site on purpose and in violation of 42 U.S.C. § 1983, and then abusing Plaintiff by repeatedly ignoring the pain they were causing her by making her bear weight on her injured leg and repeatedly causing further harm and pain to her surgical site.

61.     Each of the Defendants separately and in concert acted outside the scope of their jurisdiction and without authorization of law, and each of the Defendants separately and in concert acted willfully, knowingly and purposefully with the specific intent to deny Plaintiff proper and necessary medical treatment in violation of 42 U.S.C. § 1983.

62.     Due to the excessive and unreasonable force by Defendants, Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public harassment, mental, emotional and physical harm and stress, costs of bringing suit, additional surgical procedures, impairment of self-esteem, mental health, and physical distress, and other injuries not yet fully ascertained. By reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.

16

## AS AND FOR COUNT TWO
## 42 U.S.C. § 1983- ABUSE OF PROCESS

63.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 62 of this Complaint with the same force and effect as though fully set forth

herein.

64.     The wrongful acts conducted against the Plaintiff by the Defendants NYPD and

OFFICERS ORTIZ and INSIGNARES constituted abuse of process, abuse of authority, breach of

procedures, and violations of the Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. The

Defendants NYPD and OFFICERS ORTIZ and INSIGNARES negligently and recklessly breached

their duty to prevent the commission of the civil rights violations perpetrated against Plaintiff MS.

PERRIEN, including violations of 42 U.S.C. § 1983, and substantive and procedural due process

infractions.

65.     Defendants OFFICERS ORTIZ and INSIGNARES committed these acts and used

their access, power and authority to disregard Plaintiff's clear and known medical condition to satisfy

their own abusive and sadistic purposes. They then did not report the use of force, abuses and

violations they committed to Plaintiff MS. PERRIEN in an effort to evade responsibility and to cover

up their abuses.

66.     Under color of law, said abuse of process was continued by the Defendants

MORANO, NICHOLAS, CITY and NYPD's refusal to adequately investigate and properly

discipline Defendants OFFICERS ORTIZ and INSIGNARES for their actions against Plaintiff MS.

PERRIEN. The Defendants MORANO, NICHOLAS, CITY and NYPD failed to properly investigate

and verify the veracity of Plaintiff's claims, failed to pursue, seek or review substantial evidence

supporting MS. PERRIEN's complaint- such evidence including the court officers testimony, the EMT medic's testimony, the legal aid advisor's knowledge of events, or medical records of the worsened condition of MS. PERRIEN's leg after being in OFFICERS ORTIZ and INSIGNARES's custody and care.

67.     Due to the abuse of process by Defendants, Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public harassment, mental, emotional and physical harm and stress, costs of bringing suit, additional surgical procedures, impairment of self-esteem, mental health, and physical distress, and other injuries not yet fully ascertained. By reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.

## AS AND FOR COUNT THREE
## 42 U.S.C. § 1983- FAILURE TO INTERVENE

68.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 67 of this Complaint with the same force and effect as though fully set forth herein.

69.     Under color of law, Defendants, and each one of them, had knowledge of the wrongs conspired to be done against the Plaintiff, had the power to prevent or aid in preventing the commission of such violations, but neglected and/or refused to prevent such wrongful acts being committed. Instead, Defendants aided and abetted in the abuses against Plaintiff.

70.     Defendants OFFICERS ORTIZ and INSIGNARES have been trained by the Defendants CITY and NYPD on the proper procedures and rules of conduct while handling civilians.

Defendants OFFICERS ORTIZ and INSIGNARES were aware of these procedures and rules when Defendant OFFICERS ORTIZ and INSIGNARES, without motive or reason, lifted Plaintiff off the ground, threw her into the van and caused her to land on her injured leg. It was clear that OFFICERS ORTIZ and INSIGNARES had caused injury to Plaintiff when she cried out in pain and complained of her leg. Both OFFICERS ORTIZ and INSIGNARES had the opportunity to intervene against the abusive and unreasonable acts of the other, but both failed to do so.

71.     Even after these abusive acts occurred, Defendants OFFICERS ORTIZ and INSIGNARES continued to fail to intervene by allowing OFFICER ORTIZ and INSIGNARES to continue to abuse Plaintiff by dragging her unlawfully through Queens Central Booking and purposefully swinging the court door on Plaintiff MS. PERRIEN's healing surgical site, and failing to report this excessive and unreasonable use of force and unlawful seizure to a supervisor or to Defendant NYPD.

72.     Defendants OFFICERS ORTIZ and INSIGNARES had an opportunity to intervene at any point of said events: before, during, or after. But, Defendants ORTIZ and INSIGNARES chose not to do so and allowed this abuse, humiliation, degradation, harm and blatant violation of civil rights to occur against Plaintiff.

73.     Defendants MORANO, NICHOLAS, CITY and NYPD had the opportunity to intervene on the cover up and extension of the abusive and unreasonable acts of Defendants OFFICERS ORTIZ and INSIGNARES when they received the formal complaint of Plaintiff MS. PERRIEN. But Defendant MORANO, NYPD and CITY failed to intervene when they closed the Internal Affairs investigation due to "insufficient evidence" despite the presence of testimonial

19

witnesses such as the court officers, EMT medic, legal aid advisor and the other male transported in the van with Plaintiff MS. PERRIEN.

74.     Due to the failure to intervene by Defendants, Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public harassment, mental, emotional and physical harm and stress, costs of bringing suit, additional surgical procedures, impairment of self-esteem, mental health, and physical distress, and other injuries not yet fully ascertained. By reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.

## AS AND FOR COUNT FOUR
## 42 U.S.C. § 1983- UNLAWFUL SEIZURE OF PERSONS AND PROPERTY

75.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 74 of this Complaint with the same force and effect as though fully set forth herein.

76.     The Defendants and each of them acted under color of law to deny the Plaintiff her constitutional rights to protection from unlawful seizure of person and property under the Fourth Amendment of the United States Constitution in violation of 42 U.S.C. § 1983.

77.     Under color of law, Defendants OFFICERS ORTIZ and INSIGNARES had no right to unreasonably and abusively grab Plaintiff MS. PERRIEN's body. Defendant OFFICERS ORTIZ and INSIGNARES had no right to viciously and abusively throw Plaintiff MS. PERRIEN into the van on her injured leg. Defendants OFFICERS ORTIZ and INSIGNARES had no right to grab Plaintiff MS. PERRIEN's body and drag her around Queens Central Booking. Defendant OFFICERS

ORTIZ and INSIGNARES had no right to commit lack of care and duty, and purposefully allow the swinging door to slam into MS. PERRIEN's injured leg.

78.     These were acts of continued unlawful seizure of Plaintiff MS. PERRIEN's body, and contributed more harm and injury to her recovering surgical site. These acts demonstrate a lack of care or duty, and resortment to unlawful seizure of person and property in order to execute Defendant OFFICERS ORTIZ and INSIGNARES's unlawful wishes to cause Plaintiff MS. PERRIEN's mental and physical detriment and pain.

79.     Due to the unlawful seizure of persons and property by Defendants, Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public harassment, mental, emotional and physical harm and stress, costs of bringing suit, additional surgical procedures, impairment of self-esteem, mental health, and physical distress, and other injuries not yet fully ascertained. By reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.


## AS AND FOR COUNT FIVE
## 42 U.S.C. § 1983- DUE PROCESS AND DENYING BODILY INTEGRITY
## FIFTH AND FOURTEENTH AMENDMENTS

80.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 79 of this Complaint with the same force and effect as though fully set forth herein.

81. The acts of Defendants CITY, NYPD and OFFICERS ORTIZ and INSIGNARES in subjecting Plaintiff to the abuse occurred without any process being afforded to Plaintiff and she was denied any opportunities guaranteed by the Fifth and Fourteenth Amendments.

82. Under color of law, there was no opportunity afforded to Plaintiff MS. PERRIEN to report the abuses transpired against her by Defendants OFFICER ORTIZ and INSIGNARES after she was thrown into the van and caused significant injury on her leg. Even though Defendants OFFICER ORTIZ and INSIGNARES's conduct was seen and reviewed by the EMT medic, the legal aid advisor, the judge and the court officers, there was no avenue for due process to be afforded in response to Defendant OFFICER ORTIZ and INSIGNARES's abusive and unreasonable actions.

83. Due to the lack of opportunity for due process, Plaintiff MS. PERRIEN had no choice but to endure the violation of her civil rights and the physical abuses of Defendant OFFICER ORTIZ and INSIGNARES against her.

84. Even after Plaintiff MS. PERRIEN reported the violations of her rights by Defendants OFFICERS ORTIZ and INSIGNARES to Defendants MORANO, CITY and NYPD, she was still denied her right to due process by Internal Affairs dismissing her complaint for "lack of sufficient evidence" despite the presence of several testimonial witnesses- the court officers, the EMT medic and the legal aid advisor.

85. Due to the lack of due process by Defendants, Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public harassment, mental, emotional and physical harm and stress, costs of bringing suit, additional surgical procedures, impairment of self-esteem, mental health, and physical distress, and other injuries not yet fully ascertained. By

reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.

## AS AND FOR COUNT SIX
## 42 U.S.C. § 1983- RETALIATION

86.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 85 of this Complaint with the same force and effect as though fully set forth herein.

87.     Under color of law, Defendants OFFICERS ORTIZ and INSIGNARES acted in retaliation towards Plaintiff MS. PERRIEN in violation of 42 U.S.C. § 1983.

88.     Defendants OFFICERS ORTIZ and INSIGNARES threw Plaintiff MS. PERRIEN into the van abusively and unreasonably in retaliation to what Defendants OFFICERS ORTIZ and INSIGNARES believed were lies told by Plaintiff MS. PERRIEN. In reality, Plaintiff MS. PERRIEN was telling the truth the entire time about her freshly healing injuries, as could be proven by her medical records, and could not bear weight on her healing leg because she had in fact broken her femur and underwent surgery a mere six days prior. In particular after acknowledging their mistreatment of Plaintiff and being told of the same by the EMT medic. OFFICERS ORTIZ and INSIGNARES did not seek medical treatment for Plaintiff, continued to force her to suffer pain, dragged her before the court and slammed a door on her injured leg.

89.     Defendants OFFICERS ORTIZ and INSIGNARES retaliated against Plaintiff MS. PERRIEN for allegedly "lying" about her medical condition by purposefully seizing and throwing her into the van causing pain, anguish, embarrassment and excessive harassment. Defendants OFFICERS ORTIZ and INSIGNARES had the opportunity to verify Plaintiff MS. PERRIEN's

statements by reading her medical file, although it was not necessary to refrain from committing this abusive retaliatory act.

90.     Defendants OFFICERS ORTIZ and INSIGNARES retaliated against the judge's grant of freedom to Plaintiff MS. PERRIEN by purposefully allowing the swinging door to slam on her injured leg and cause her pain and anguish to the Officers' sadistic and abusive delight.

91.     Defendants OFFICERS ORTIZ and INSIGNARES knew or should have known that Plaintiff MS. PERRIEN was not "lying" about being fresh out of surgery. Plaintiff MS. PERRIEN demonstrated she could clearly not walk, that she was in pain, and repeatedly informed Defendants OFFICERS ORTIZ and INSIGNARES that they could verify her injuries in her medical file if they desired. But it is clear Defendants OFFICERS ORTIZ and INSIGNARES wanted to cause Plaintiff more harm and unjustly retaliate against her, and chose to ignore Plaintiff's pain, anguish and pleas to stop hurting her.

92.     Due to acts of retaliation by Defendants, Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public harassment, mental, emotional and physical harm and stress, costs of bringing suit, additional surgical procedures, impairment of self-esteem, mental health, and physical distress, and other injuries not yet fully ascertained. By reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.

**AS AND FOR COUNT SEVEN**
**42 U.S.C. § 1983- FAILURE TO REPORT USE OF FORCE, ABUSE AND VIOLATIONS**
**OF PLAINTIFF'S RIGHTS**

93.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 92 of this Complaint with the same force and effect as though fully set forth

herein.

94.     Plaintiff MS. PERRIEN could not be reinjured without an intentional act of abuse of

purpose. Defendants OFFICERS ORTIZ and INSIGNARES acted under color of law to violate

Plaintiff's rights and then failed to report the use of force, abuses and violations that Defendants

OFFICERS ORTIZ and INSIGNARES committed. Defendants OFFICERS ORTIZ and

INSIGNARES did not write a report, notified a person or committed any other relevant act to report

the abuses and violations of Plaintiff's rights.

95.     Defendants OFFICERS ORTIZ and INSIGNARES had knowledge that they were and

are legally required to follow procedures and policies to prevent use of force, abuses and violations.

Defendants OFFICERS ORTIZ and INSIGNARES had knowledge that illegal acts should be

reported. Instead, Defendants OFFICERS ORTIZ and INSIGNARES were complicit and supportive

of the violations of Plaintiff's civil rights, and chose for their actions to continue undisciplined,

unsupervised and unreported.

96.     Due to the failure to report abuses and violations of Plaintiff's rights by Defendants,

Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation

of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public

harassment, mental,  emotional and physical harm and stress, costs of bringing suit, additional

surgical procedures, impairment of self-esteem, mental health, and physical distress, and other

injuries not yet fully ascertained. By reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.

## AS AND FOR COUNT EIGHT
## 42 U.S.C. § 1983- FAILURE AND DELIBERATE INDIFFERENCE TO PROVIDE TIMELY AND ADEQUATE MEDICAL CARE
## FOURTEENTH AMENDMENT

97.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 96 of this Complaint with the same force and effect as though fully set forth herein.

98.     Defendants OFFICERS ORTIZ and INSIGNARES were repeatedly verbally foretold that Plaintiff MS. PERRIEN was healing from surgery and could not walk properly. Defendants OFFICERS ORTIZ and INSIGNARES decided to ignore this information, neglect to check Plaintiff's medical record and repeatedly denied Plaintiff Ms. PERRIEN timely and adequate medical care while in their custody.

99.     Defendants OFFICERS ORTIZ and INSIGNARES could reasonably infer from Plaintiff's cry when she was thrown into the van that Defendants OFFICERS ORTIZ and INSIGNARES had caused further injury to Plaintiff. Yet, Defendants ignored Plaintiff's painful scream and did not seek to provide her adequate medical care for the injuries Defendants had caused her.

100.     Defendants OFFICERS ORTIZ and INSIGNARES could also reasonably infer that Plaintiff was telling the truth of being unable to bear weight on her injured leg by her clear inability to walk on both legs. But, Defendants OFFICERS ORTIZ and INSIGNARES ignored Plaintiff MS. PERRIEN's injuries and demanded her to walk by herself. When Plaintiff MS. PERRIEN could

clearly not, Defendants OFFICERS ORTIZ and INSIGNARES dragged her around Queens Central Booking without any care for her medical condition or medical needs.

101.     Defendants OFFICERS ORTIZ and INSIGNARES purposefully and intentionally caused Plaintiff more pain and in need of more medical attention when they allowed the court door to swing on her. This was done with full knowledge of Plaintiff MS. PERRIEN's recent surgery and recovery, and yet Defendants OFFICERS ORTIZ and INSIGNARES proceeded to perform this abusive act and cause Plaintiff to require even more medical care and attention that Defendants still did not provide to her.

102.     By the time Defendants OFFICERS ORTIZ and INSIGNARES had performed all of these intentionally abusive acts on Plaintiff MS. PERRIEN, she was in so much pain and agony that she had to be returned to the hospital for further medical care. Although the medical staff could not ascertain immediately the extent of the damage caused to Plaintiff MS. PERRIEN, the constant pain over months and the necessary second surgery to realign the damage done by Defendants OFFICERS ORTIZ and INSIGNARES demonstrates the extreme lack of medical care and attention by Defendants OFFICERS ORTIZ and INSIGNARES when they caused her reinjury.

103.     Due to Defendants' deliberate indifference to Plaintiff's known and clear medical needs and failure to provide timely and adequate medical care, Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public harassment, mental, emotional and physical harm and stress, costs of bringing suit, additional surgical procedures, impairment of self-esteem, mental health, and physical distress, and other injuries not yet fully ascertained. By

27

reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.

## AS AND FOR COUNT NINE
## 42 U.S.C. § 1983- MUNICIPAL VIOLATIONS

104.    The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 103 of this Complaint with the same force and effect as though fully set forth herein.

105.    Defendants CITY and NYPD knew or should have known of its employees', agents', or servants' propensity to engage in the illegal and wrongful acts detailed above.

106.    Prior to October 16, 2018, Defendants CITY and NYPD developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in Defendant CITY and NYPD's custody, which policies and/or customs caused the violation of Plaintiff MS. PERRIEN's rights. Upon information and belief, it was the policy and/or custom of Defendants CITY and NYPD to improperly and inadequately investigate Police Officer misconduct, and acts of misconduct were instead tolerated by Defendants CITY and NYPD., including, but not limited to incidents where Defendants have in the past abused and mistreated civilians while being in their custody. It was the policy and/or custom of Defendants CITY and NYPD to fail to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the individual Defendants in this and in similar cases involving misconduct, thereby failing to adequately discourage further constitutional violations on the part of its Police Officers. Defendants CITY and NYPD did not require appropriate in-service training or re-training of officers who were known to

28

have engaged in police misconduct. As a result of the above described policies and/or customs, Police Officers of Defendants CITY and NYPD believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated. The above policies and/or customs demonstrated a deliberate indifference on the part of policymakers of Defendants CITY and NYPD to the constitutional rights of persons within Defendants CITY and NYPD, and were the cause of violations of Plaintiff's rights alleged herein. As a result of the wrongful, deliberate, indifferent and illegal acts of Defendants CITY, NYPD and OFFICERS ORTIZ and INSIGNARES, Plaintiff MS. PERRIEN claims damages against Defendants CITY and NYPD for the injuries set forth above.

107.    In addition to permitting a pattern of unlawful conduct, Defendants CITY and NYPD have failed to maintain a proper system for investigation of all incidents of unjustified acts of retaliation, physical abuse, beatings and excessive use of force by officers.

108.    Defendants CITY and NYPD have failed to maintain a system of addressing physical and mental abuse, review of assault, battery, negligence, failure to intervene and violation of civil rights by Police Officers and has failed to identify the improper conduct by Police Officers and thereby failed to subject Police Officers who violate laws closer supervision or restraint, to the extent that it has become the custom of Defendants CITY and NYPD to tolerate the illegal, improper and wrongful actions by Police Officers. Defendant OFFICER NICHOLAS's refusal to amend the faulty report taken from Plaintiff in a semi-conscious state is an example of Defendants CITY and NYPD's failure to supervise and enforce policies that are consistent with Plaintiff's rights.

109.    By permitting and assisting such a pattern of misconduct, the Defendants CITY and NYPD have acted under color of custom and policy to condone, encourage and promote the

deprivation of Plaintiff MS. PERRIEN's Fourth, Fifth and Fourteenth Amendment rights; and Defendants OFFICERS ORTIZ and INSIGNARES were encouraged by Defendants CITY and NYPD to believe that their actions against the Plaintiff would be accepted without impunity, just as these actions have been so accepted to date.

110. As a proximate cause of Defendants CITY and NYPD's custom and policy of supporting and effectively promoting the very same police and correction officer abuses which occurred against Plaintiff MS. PERRIEN, said Plaintiff was further subjected to great fear, personal humiliation and degradation, with wanton disregard for the serious harm and damage done to the physical and emotional well-being of the Plaintiff.

111. Defendants CITY and NYPD failed to adequately supervise the proper training of Defendants OFFICERS ORTIZ and INSIGNARES in the rules and procedures while handling civilians. The failure to supervise their training led to the careless and unlawful conduct of Defendant OFFICERS ORTIZ and INSIGNARES in handling civilians.

112. Defendants CITY and NYPD failed to adequately supervise the conduct of Defendants OFFICERS ORTIZ and INSIGNARES while having Plaintiff MS. PERRIEN in their custody on October 16, 2018 and thereafter. Defendants OFFICERS ORTIZ and INSIGNARES were allowed to do anything they wanted to Plaintiff MS. PERRIEN, including abusing and harming her shamelessly. Further, the lack of supervision by Defendants CITY and NYPD is what led Defendants OFFICERS ORTIZ and INSIGNARES to carry out injustices against Plaintiff MS. PERRIEN without accountability.

113. Under color of law, the Defendant NYPD failed to discipline Defendants OFFICERS ORTIZ and INSIGNARES by not reprimanding or punishing OFFICERS ORTIZ and

30

INSIGNARES. After Defendants OFFICERS ORTIZ and INSIGNARES threw Plaintiff abusively and carelessly in the back of the van, Defendants OFFICERS ORTIZ and INSIGNARES suffered no consequences or repercussions for their actions. After Defendants OFFICERS ORTIZ and INSIGNARES dragged Plaintiff MS. PERRIEN around Queens Central Booking, Defendants OFFICERS ORTIZ and INSIGNARES suffered no consequences. After Defendants OFFICER ORTIZ and INSIGNARES purposefully injured Plaintiff MS. PERRIEN further by slamming a door onto her surgical site, Defendants OFFICERS ORTIZ and INSIGNARES suffered no consequences by Defendants CITY and NYPD. Further, Defendants CITY and NYPD failed to properly investigate Plaintiff MS. PERRIEN's complaint, and thus allowed Defendants OFFICERS ORTIZ and INSIGNARES acts to occur without imposing any repercussion or accountability for their failure to follow proper procedure and protocol, and failing to supervise the upholding of Plaintiff's rights.

114.    Due to the municipal violations by Defendants, Plaintiff sustained physical, monetary and emotional injuries, including, but not limited to, violation of her civil rights, damage to her emotional well-being, loss of comfort, public humiliation, public harassment, mental, emotional and physical harm and stress, costs of bringing suit, additional surgical procedures, impairment of self-esteem, mental health, and physical distress, and other injuries not yet fully ascertained. By reason of the foregoing, Plaintiff has been damaged in a sum in excess of five million ($5,000,000) dollars.

**PUNITIVE DAMAGES ARE PROPER**
**AGAINST THE INDIVIDUAL DEFENDANTS**

115.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 114 of this Complaint with the same force and effect as though fully set forth herein.

116.     The acts of the individual Defendants were willful, wanton, malicious and oppressive and were motivated solely by a desire to harm Plaintiff, without regard to for Plaintiff's well-being, and were based on a lack of concern and ill-will towards Plaintiff. Such acts therefore deserve an award in excess of ten million ($10,000,000) dollars as punitive damages.

**WHEREFORE,** Plaintiff demands judgment against Defendants:

a.     On the Count One in the sum in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

b.     On the Count Two in the sum in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

c.     On the Count Three in the sum in excess of five million($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

d.     On the Count Four in the sum in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

e.     On the Count Five in the sum in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

f.     On the Count Six in the sum in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

g.     On the Count Seven in the sum in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

h.   On the Count Eight in the sum in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

i.   On the Count Nine in the sum in excess of five million ($5,000,000) dollars as well as punitive damages, costs and attorney's fees;

j.   Punitive damages in the sum in excess of five million ($10,000,000) dollars as well as punitive damages, costs and attorney's fees;

k.   Award attorney's fees and costs of this action to the Plaintiff pursuant to 42 U.S.C. § 1988; and

l.   Declaratory Judgment that defendants willfully violated Plaintiff's rights secured by federal and state law as alleged herein;

m.   Injunctive relief, requiring Defendants to correct all past violations of federal and state law as alleged herein; to enjoin Defendants from continuing to violate federal and state law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal and state laws;

n.   Award such other and further relief as this Court may deem appropriate.

**o.**

## A JURY TRIAL IS HEREBY DEMANDED

Dated: Hempstead, New York
      November 29, 2021

                           Respectfully submitted,

                           LAW OFFICES OF
                           FREDERICK K. BREWINGTON

By:   *ISI Frederick K. Brewington*

                           FREDERICK K. BREWINGTON
                           *Attorneys for Plaintiff*
                           556 Peninsula Boulevard
                           Hempstead, New York 11550
                           (516) 489-6959