UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

JACQULYNE PERRIEN,

                                Plaintiff,

                    v.                                              **MEMORANDUM & ORDER**
                                                                    21-CV-4443 (MKB)

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, POLICE OFFICER
NICHOLAS LECH, *in his individual and official
capacity*, DETECTIVE CHRISTOPHER
MORANO, *in his individual and official capacity*,
POLICE OFFICERS BRIAN ORTIZ and
ORLANDO INSIGNARES, *in their individual and
official capacities*,

                                Defendants.

-----------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

     Plaintiff Jacqulyne Perrien commenced this action on August 6, 2021, against Defendants

the City of New York (the "City"), the New York City Police Department (the "NYPD"), Police

Officer Nicholas Lech, Detective Christopher Morano, and Police Officers John Does #1–10,

alleging that they violated her civil and constitutional rights under 42 U.S.C. § 1983 and state

law.  (Compl. ¶¶ 1, 3, Docket Entry No. 1.)  On November 29, 2021, Plaintiff filed an Amended

Complaint replacing the John Doe Defendants with Police Officers Brian Ortiz and Orlando

Insignares.  (Am. Compl. ¶ 10, Docket Entry No. 14.)  Plaintiff alleges that on or about October

16, 2018, Officers Ortiz and Insignares, despite being made aware that Plaintiff had an injured

leg that was recently operated on, wrongfully threw her into a police van, dragged her around,

caused a door to slam on her leg, and then ignored her complaints regarding pain in her leg.  (*Id.*

¶¶ 12, 24–37.)  Plaintiff alleges claims of excessive force, abuse of process, failure to intervene,

unlawful seizure of persons and property, denial of due process, retaliation, failure to supervise, failure to report abuse and violations, failure and deliberate indifference to provide timely and adequate medical care, and municipal liability. (*Id.* ¶¶ 1, 55–114.) Defendants move to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and Plaintiff opposes the motion.[1]

For the reasons set forth below, the Court grants Defendants' motion in part and denies it in part.

## I. Background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of this Memorandum and Order.

### a. The parties

Plaintiff is a resident of New York. (*Id.* ¶ 5.) The City "is responsible for [] maintaining, funding and operating [the NYPD] and the functions, employees, agents and personnel within." (*Id.* ¶ 6.) The NYPD is a law enforcement agency that "maintains, operates and staffs the 105th Precinct located at 92-08 222nd Street, Queens Village, NY 11428." (*Id.* ¶ 7.) Officers Lech, Ortiz, Insignares, and Detective Morano (collectively, the "Individual Defendants"), were, at the time of the events alleged in the Amended Complaint, NYPD officers employed with the 105th Precinct in Queens Village, New York. (*Id.* ¶¶ 8–10.)

---

[1] (Defs.' Mot. to Dismiss ("Defs.' Mot."), Docket Entry No. 21; Defs.' Mem. of Law in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 22; Defs' Reply in Supp. of Defs' Mot. ("Defs' Reply"), Docket Entry No. 24; Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n."), Docket Entry No. 23.)

#### b.   Plaintiff's hospitalization and arrest

On October 16, 2018, Plaintiff was hit by a car in Queens while walking in a crosswalk. (*Id.* ¶ 12.)  An ambulance took Plaintiff to Jamaica Hospital, where the medical staff determined that Plaintiff required immediate surgery to repair a fractured left femur.  (*Id.* ¶¶ 13–14.)  An NYPD officer from the 105th Precinct entered Plaintiff's hospital room to ask questions for a police report.[2]  (*Id.* ¶ 16.)  Plaintiff does not remember what she was asked or her responses to the questions posed by the NYPD officer because she was experiencing "mind-bending" pain, medicated, and coming in and out of consciousness at the time of the questioning.  (*Id.* ¶¶ 15–16.)  The NYPD officer then informed Plaintiff that they had a warrant for her arrest and thereafter handcuffed Plaintiff to her hospital bed.  (*Id.* ¶ 17.)

On that same day, Plaintiff underwent orthopedic surgery on her left femur.[3]  (*Id.* ¶ 18.) Plaintiff remained in police custody at Jamaica Hospital for five days.  (*Id.* ¶ 19.)  On October 22, 2018, the hospital discharged Plaintiff after two police officers arrived to transport her to the 105th Precinct to process charges against her.[4]  (*Id.* ¶¶ 20–21.)  The discharging physician prescribed pain medication and instructed Plaintiff to do "weight bearing as tolerated" and to use a "rolling walker for ambulation."  (*Id.* ¶ 21.)  The two NYPD officers, described by Plaintiff as "very courteous," transported Plaintiff to the 105th Precinct.  (*Id.* ¶ 22.)

---

[2]  The NYPD officer is not identified.  The police report pertained to the traffic accident that injured Plaintiff.  (Am. Compl. ¶¶ 16–17.)

[3]  The surgery involved the placement of a rod, pins, and screws in her left leg.  (*Id.* ¶ 18.)

[4]  The two NYPD officers who escorted Plaintiff from Jamaica Hospital to the 105th Precinct are unidentified.  (*See id.* ¶¶ 20–23.)

c. **Events at the precinct and Central Booking**

At the police station, Plaintiff was told that she was going to be transported to Queens Central Booking.  (*Id.* ¶ 23.)  Two different officers, later identified as Officers Ortiz and Officer Insignares,[5] subsequently arrived with a transportation van and demanded that Plaintiff get into the van by herself.  (*Id.* ¶ 25.)  The two officers did not believe Plaintiff had just undergone surgery despite Plaintiff's request that they read her medical file, and "threw" Plaintiff into the police van "face first."  (*Id.* ¶¶ 26–27.)  Plaintiff heard a "click" in her leg as she landed.  (*Id.* ¶ 27.)  Once the van arrived at Queens Central Booking, Officers Ortiz and Insignares "dragged" Plaintiff out of the van and into the building.  (*Id.* ¶ 30.)  Inside the facility, Plaintiff went through a metal detector, and the alarms went off.  (*Id.* ¶ 31.)  When Plaintiff explained that she had a rod, pins, and screws in her left leg from the surgery, Officers Ortiz and Insignares "audibly cursed" upon realizing Plaintiff was still recovering from surgery.  (*Id.* ¶ 32.)  They brought Plaintiff to the Emergency Medical Technician's office, where no meaningful medical assistance was provided to Plaintiff.  (*Id.* ¶ 33.)  Plaintiff was then placed in a holding cell before seeing a judge.  (*Id.* ¶ 34.)  The judge released Plaintiff and agreed that they should reconvene after Plaintiff has had time to heal.  (*Id.* ¶ 35.)  Plaintiff was then "drag[ged]" out of the courtroom, during which either Officer Ortiz or Insignares purposely permitted a door to slam on Plaintiff's leg.  (*Id.* ¶ 36.)  Two court officers then helped Plaintiff to the front of the courthouse and called for an ambulance to take Plaintiff back to the hospital.  (*Id.* ¶ 37.)

---

[5] Officers Ortiz and Insignares never made their names or badge numbers known to Plaintiff during the relevant incident.  (Am. Compl. ¶ 24.)

### d.    Post-processing events

On October 22, 2018, Plaintiff arrived back at Jamaica Hospital.  (*Id.* ¶ 38.)  The medical

staff at Jamaica Hospital informed Plaintiff that they could not perform a second surgery on her

leg until one year after the initial surgery.  (*Id.*)  On October 23, 2018, Plaintiff was discharged.

(*Id.* ¶ 39.)  On or around July 12, 2019, Plaintiff underwent a second surgery on her leg at the

New York University Orthopedic Surgery Fracture Clinic.[6]  (*Id.* ¶¶ 42, 44.)

"Later on," Plaintiff contacted the 105th Precinct in an attempt to "revise the report she

gave to the police officer while not lucid and being in and out of consciousness at Jamaica

Hospital."  (*Id.* ¶ 49.)  "Officer Nicholas," later identified as Officer Nicholas Lech, informed

Plaintiff that "she could not revise or amend her report and refused to provide her any

assistance."  (*Id.*)

On August 5, 2020, Plaintiff filed a formal complaint with the NYPD about the alleged

mistreatment by Officers Ortiz and Insignares.  (*Id.* ¶ 50.)  In August of 2020 and January and

July of 2021, "efforts were made to obtain information" regarding the names of the John Does

from Defendant Morano of the Internal Affairs Bureau ("IAB"), but he refused to supply them.

(Pl.'s Opp'n 5, 7.)  On January 29, 2021, Detective Morano informed Plaintiff that her complaint

had been closed and that IAB had determined that there was "'insufficient evidence' to prove her

complaint."  (Am. Compl. ¶ 53.)  Plaintiff alleges that Detective Morano and the IAB closed the

complaint file "without receiving or reviewing [Plaintiff's] medical files and reviewing all of the

available evidence," as the sixteen days between the filing and the closing of the case "is not

---

[6]  After the second surgery, Plaintiff lived with her aunt's aid for over a year, and
continues to go to physical therapy and follow-up doctor's appointments.  (Am. Compl. ¶¶ 46–
47.)

enough time to send [Health Insurance Portability and Accountability Act] forms to hospitals and receive information back."  (*Id.* ¶ 54.)

On July 8, 2021, Plaintiff again contacted Detective Morano via email to request the names, ranks, and badge numbers of Officers Ortiz and Insignares.  (Email dated July 8, 2021 ("July 2021 Email"), annexed to Decl. of Mark Zuckerman in Supp. of Defs.' Mot. ("Zuckerman's Decl.") as Ex. A, Docket Entry No. 25-1.)  Detective Morano informed Plaintiff that information concerning the case would have to be obtained through a Freedom of Information Law ("FOIL") request, and provided Plaintiff with the case reference number as well as the relevant FOIL unit's contact information.  (*Id.*)  On or about October 7, 2021, Plaintiff's counsel verbally requested Defendants' counsel to provide the names of the two officers and followed up with a written request on or about October 31, 2021.  (Pl.'s Opp'n 7.) Defendants characterized the "purported" oral conversation on October 7, 2021 as "vague," and denied there was any follow-up.  (Defs.' Reply 3.)

On November 5, 2021, the Court directed Defendants' counsel to ascertain the full names and addresses of the individuals alleged to be Police Officers John Doe #1 and 2.  (Order dated Nov. 5, 2021.)  Forty minutes later, Defendants' counsel emailed Plaintiff's counsel to supply the names of the two officers.  (Pl.'s Opp'n 8.)

## II.   Discussion

### a.   Standard of review

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."  *Sacerdote v. N. Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145

(2d Cir. 2020). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678). Although all allegations contained in the Amended Complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678; *Vaughn*, 957 F.3d at 145 (same).

### a.   NYPD suability

The Court dismisses Plaintiff's claims against the NYPD because it is not a suable entity.

Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law." N.Y.C. Charter, chap. 17 § 396. This provision "has been construed to mean that New York City departments, [such as the NYPD,] as distinct from the City itself, lack the capacity to be sued." *Matson*, 631 F.3d at 77 (Straub, J., dissenting in part, concurring in part) (quoting *Ximines v. George Wingate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008) (per curiam)); *see Paige-El v. Herbert*, 735 F. App'x 753, 755 (2d Cir. 2018) ("The NYPD, as a city agency, is not a suable entity." (citing N.Y.C. Charter, chap. 17 § 396)); *see also Nnebe v. Daus*, 644 F.3d 147, 158 n.6 (2d Cir. 2011) ("It is well settled in this [c]ourt that, as a general matter, agencies of New York City are not suable entities in [section] 1983 actions." (citing *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007))).

Because the NYPD is an agency of the City, it is not amenable to suit, and any action against it must instead be brought against the City.  *See Jenkins*, 478 F.3d at 93 n.19 (noting that the NYPD is not a suable entity); *Morris v. N.Y.C. Police Dep't*, 59 F. App'x 421, 422 (2d Cir. 2003) (affirming dismissal of claims asserted against the NYPD due to non-suable-entity status). Accordingly, the Court dismisses Plaintiff's claims against the NYPD.

**b.   The claims against the former John Doe Defendants — Officers Ortiz and Insignares — relate back**

Defendants argue that Plaintiff's claims of excessive force, abuse of process, failure to intervene, unlawful seizure of persons and property, denial of due process, retaliation, failure to supervise, failure to report abuse and violations, and failure and deliberate indifference to provide timely and adequate medical care against Officers Ortiz and Insignares are barred by the three-year statute of limitations for section 1983 actions because Plaintiffs "fail[ed] to amend and identify John Doe defendants . . . within the statute of limitations period."  (Defs.' Mem. 7 (quoting *Miles v. City of New York*, No. 14-CV-9302, 2018 WL 3708657, at *6 (S.D.N.Y. Aug. 3, 2018)).)  In support, Defendants argue that Plaintiff's lack of knowledge of the identity of Officers Ortiz and Insignares "[did] not constitute a mistake of identity" that would allow her Amended Complaint to relate back to the original Complaint pursuant to Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure.  (*Id.* at 7–8 (quoting *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013)).)

Plaintiff argues that the claims against Officers Ortiz and Insignares relate back to the timely-filed Complaint pursuant to Rule 15(c)(1)(A) because she exercised due diligence in an effort to obtain the identities of the two officers within the limitations period and her original

Complaint supplied sufficient identifying information about the two officers.[7]  (Pl.'s Opp'n 9.)

Rule 15(c)(1)(A) of the Federal Rules of Civil Procedure allows an amendment to a pleading to relate back to the date of the original pleading when the law that provides the applicable statute of limitations allows relation back.  Fed. R. Civ. P. 15(c)(1)(A).  Courts must examine the "controlling *body* of limitations law," and apply state law if it provides "a more forgiving principle of relation back than the one provided" by Rule 15(c).  *Hogan*, 738 F.3d at 518 (quoting Fed. R. Civ. P. 15, Advisory Comm. Notes 1991).  The Second Circuit has made clear that New York law provides a more forgiving principle of relation back in the John Doe context compared to the federal relation back doctrine under Rule 15(c).  *Hogan*, 738 F.3d at 518.

Under section 1024 of the New York Civil Practice Law and Rules ("CPLR"), a plaintiff may commence a lawsuit against John Doe defendants and toll the statute of limitations as to the unnamed defendants provided that the plaintiff (1) "exercise[s] due diligence, prior to the running of the statute of limitations, to identify the defendant by name;" and (2) "describe[s] the John Doe party in such form as will fairly apprise the party that [he] is the intended defendant."[8]  *Hogan*, 738 F.3d at 519 (quoting *Bumpus v. N.Y.C. Transit Auth.*, 883 N.Y.S.2d 99, 104 (App.

---

[7]  Plaintiff does not allege that she made a mistake about the officers' identity.  The replacement of a John Doe with a name party is considered a change in the party being sued, rather than a mistake in the original identity of that party.  *See Hogan v. Fischer*, 738 F.3d 509, 517–18 (2d Cir. 2013).

[8]  While the text of the CPLR provides only for an extension of the period in which service of process must be made, New York courts, and courts in this District including this Court interpreting the CPLR, understand section 1024 to also toll the statute of limitations.  *Strada v. City of New York*, No. 11-CV-5735, 2014 WL 3490306, at *5 n.4 (E.D.N.Y. July 11, 2014); *see also Heinz-Wright v. City of New York*, No. 15-CV-3269, 2016 WL 3627323, at *3 (E.D.N.Y. June 3, 2016), *report and recommendation adopted sub nom. Heinz-Wright v. New York*, 2016 WL 3620759 (E.D.N.Y. June 29, 2016); *Herbert v. Gabel Equip. Corp.*, 507 N.Y.S.2d 214, 215 (App. Div. 1986).

Div. 2009))).  Due diligence in this context requires that a plaintiff "show that he or she made timely efforts to identify the correct party before the statute of limitations expired."  *Doe v. New York*, 97 F. Supp. 3d 5, 19 (E.D.N.Y. 2015) (quoting *Ceara v. Deacon*, 68 F. Supp. 3d 402, 409 (S.D.N.Y. 2014)); *see also Barrett v. City of Newburgh*, 720 F. App'x 29, 33 (2d Cir. 2017) ("A plaintiff exercising due diligence will take concrete and timely steps to ascertain an officer defendants' identity[.]").  "To identify unknown parties after filing, a plaintiff is advised to serve discovery demands upon any known parties, seek disclosures pursuant to a [FOIL] request, or *otherwise* act with diligence."  *Boston v. Suffolk County*, 326 F. Supp. 3d 1, 13 (E.D.N.Y. 2018) (emphasis added) (quoting *Williams v. United States*, No. 07-CV-3018, 2010 WL 963474, at *12 (S.D.N.Y. Feb. 25, 2010)).  "Formal discovery demands and requests for judicial intervention are both common means by which parties may timely exercise due diligence to ascertain defendants' identities, but they are certainly not the sole avenues to do so."  *Joseph v. Bute*, No. 16-CV-2004, 2019 WL 181302, at *5 (E.D.N.Y. Jan. 9, 2019).  Due diligence may include, among other examples, "writ[ing] to the NYPD directly to request the names of the officers who arrested him and/or documents pertaining to the arrest," and "writ[ing] to New York City Corporation Counsel to memorialize verbal requests for identification of the names of the officers involved in the arrest."  *Wilson v. City of New York*, No. 15-CV-7368, 2017 WL 9538860, at *5 (S.D.N.Y. Apr. 4, 2017), *report and recommendation adopted*, 2017 WL 2693599 (S.D.N.Y. June 19, 2017).  Courts typically find a lack of due diligence "where the plaintiff failed to take 'any action beyond filing his original complaint' prior to the expiration of the statute of limitations."  *Abreu v. City of New York*, No. 17-CV-6179, 2018 WL 3315572, at *5 (S.D.N.Y. July 5, 2018) (quoting *Berman v. Perez*, No. 17-CV-2757, 2018 WL 565269, at *3 (S.D.N.Y. Jan. 24, 2018) and collecting cases).

10

If the due diligence and fair notice conditions are satisfied, the statute of limitations is tolled for up to 120 days during which the plaintiff must identify the unknown defendants and serve process upon them.  *See JCG v. Ercole*, No. 11-CV-6844, 2014 WL 1630815, at *13 (S.D.N.Y. Apr. 24, 2014) ("If a plaintiff fulfills these conditions, he must then ascertain the identity of unknown [John] Doe parties, and . . . serve process upon them, within 120 days from filing [the original complaint]." (first and second alterations in original) (internal quotation marks omitted) (quoting *Williams*, 2010 WL 963474, at *12)), *report and recommendation adopted*, 2014 WL 2769120 (S.D.N.Y. June 18, 2014); *Drake v. Lab'y Corp. of Am. Holdings*, No. 02-CV-1924, 2009 WL 2867901, at *6 (E.D.N.Y. Sept. 3, 2009) (noting that section 1024 "would indeed have stopped the three-year clock, but only if [the plaintiff] were able to identify [the defendants], and effect service on them within 120 days"), *aff'd*, 417 F. App'x 84 (2d Cir. 2011); *Wilson v. City of New York*, No. 03-CV-2495, 2006 WL 2528468, at *3 n.11 (S.D.N.Y. Aug. 31, 2006) (noting that the CPLR "rule provides only for a 120-day extension" of the statute of limitations); *Bumpus*, 883 N.Y.S.2d at 105 (noting that the plaintiffs commencing suit by filing, pursuant to § 1024, are in the "unenviable position" of having to identify John Doe defendants and serve process upon them within 120 days of filing); *Tucker v. Lorieo*, 738 N.Y.S.2d 33, 35 (App. Div. 2002) ("Once commenced by filing, [pursuant to § 1024,] the statute was tolled for 120 days pursuant to CPLR 306–b.").

Plaintiff satisfies the due diligence requirement under CPLR § 1024.  On August 5, 2020, Plaintiff filed a complaint with IAB regarding Officers Ortiz and Insignares' alleged conduct, (Am. Compl. ¶ 50), and the IAB failed to supply the names of two officers after more than six months of internal investigation, (*id.* ¶¶ 50–53).  Plaintiff followed up with IAB twice, in January of 2021 and July of 2021, to make additional attempts at ascertaining the identity of the officers.

11

(Pl.'s Opp'n 7–8; Am. Compl. ¶¶ 52–53; July 2021 Email.)  Subsequently, Plaintiff filed her

Complaint within the limitations period, and Plaintiff's counsel verbally requested the names of

the John Doe officers from Defendants' counsel in October of 2021.  (Pl.'s Opp'n 7; July 2021

Email.)  Defendants characterize the verbal exchange as "vague" but do not deny that this

conversation took place.  (Defs.' Reply 3.)  After the Court ordered Defendants to ascertain and

provide the identity of the two officers, Defendants complied "forty . . . minutes after being

ordered to do so."  (Order dated Nov. 5, 2021; Pl.'s Opp'n 8.)  Thus, Plaintiff obtained the names

of Officers Ortiz and Insignares within less than two weeks after the limitations period expired.

(*Id.*)  Viewing the facts in light most favorable to Plaintiff, this is not a case where "there is no

indication of any effort to identify the proper defendants before the expiration of the limitations

period."  *Maccharulo v. Gould*, 643 F. Supp. 2d 587, 597 (S.D.N.Y. 2009).  Plaintiff made an

initial timely inquiry with the IAB to identify the two officers more than a year before the time

limit had expired, and then pursued at least two different avenues — first directly with the

NYPD and then with Defendants' counsel — in multiple attempts to ascertain their identify,

satisfying due diligence under CPLR § 1024.  *See Barrett*, 720 F. App'x at 34 (finding that the

plaintiff, having pursued "three avenues" to identify the officers, "exceeded the efforts expended

in instances in which due diligence was found to be clearly inadequate"); *Hogan*, 738 F.3d at 519

(finding due diligence where the plaintiff submitted discovery requests to the Attorney General's

Office); *Hart v. Suffolk County.*, No. 17-CV-5067, 2020 WL 4738243, at *3 (E.D.N.Y. Aug 15,

2020) (finding due diligence when the plaintiff requested by interrogatory the names of the John

Doe defendants); *Abreu*, 2018 WL 3315572, at *6 (finding due diligence where the plaintiff filed

a complaint, traveled to the police station to inquire about the identity of officers, and retained

professional assistance to ascertain the officers' identities); *Medina v. Seiling*, No. 14-CV-6034,

2018 WL 1603857, at *7 (S.D.N.Y. Mar. 29, 2018) (finding due diligence where the plaintiff made multiple inquiries to various government departments); *Lanorith v. Truscelli*, No. 15-CV-617, 2017 WL 3634600, at *5–6 (E.D.N.Y. Aug. 22, 2017) (finding due diligence when the plaintiff requested files related to the plaintiff's criminal case from the relevant court and the District Attorney's Office); *Ceara*, 68 F. Supp. 3d at 410 (finding due diligence where the plaintiff "contacted an official to provide information about [the d]efendant's full identity" (citation omitted)).

Defendants' argument that Plaintiff fails to comply with the due diligence requirement because she never made a FOIL request or discovery demand is unpersuasive; these are not the only valid means for exercising due diligence in the identification of unknown defendants. *See Joseph*, 2019 WL 181302, at *5.  Plaintiff need not show that she pursued every avenue in identifying the two officers, but only that she made a reasonable effort in doing so.  *See id.* ("[A]lthough there was more that [the] [p]laintiff's counsel could and should have done to timely obtain [the] [d]efendants' names, [the] [p]laintiff has made that showing."); *Strada v. City of New York*, No. 11-CV-5735, 2014 WL 3490306, at *5 (E.D.N.Y. July 11, 2014) (noting that under CPLR § 1024, a plaintiff must "show that he or she made timely efforts to identify the correct party before the statute of limitations expired" (quoting *Justin v. Orshan*, 788 N.Y.S.2d 407, 408 (App. Div. 2005))).

Plaintiff also satisfies the fair appraisal requirement for relation back under CPLR § 1024.  Plaintiff's original Complaint — which included the time, place, and relevant events — provided sufficient detail to give notice to the two officers that they are the intended defendants. *See Hogan*, 738 F.3d at 519 (finding the plaintiff's original complaint fairly apprised the defendants when it "describe[d] with particularity the date, time, and location of the alleged

13

incident" and "also included substantial detail concerning the appearance of [the] assailants");

*Ceara*, 68 F. Supp. 3d at 411–12 (finding that unknown defendant was fairly apprised when the complaint provided specific details regarding the shift the defendant worked and the fact that his brother also worked at the correctional facility, and described the defendant's "precise conduct"); *cf. Terranova v. Johnson*, 444 F. Supp. 3d 477, 483–84 (W.D.N.Y. 2020) (finding the requirement not satisfied where the relevant John Doe defendants were described merely as having been employed as correctional officers by the facility at all times and failed to provide a particularized account of their conduct).  Moreover, Defendants were able to provide the names of Officers Ortiz and Insignares forty minutes after they were ordered to do so by the Court, (Pl.'s Opp'n 8), suggesting that the allegations in the Complaint were sufficiently detailed.

Accordingly, Plaintiff satisfies the criteria for relation back pursuant to Rule 15(c)(1)(A) and CPLR § 1024, and the Court therefore denies Defendants' motion to dismiss the claims against Officers Ortiz and Insignares on this ground.

### c. Plaintiff's due process, failure to intervene and abuse of process claims against Detective Morano

Defendants argue that Plaintiff's due process, failure to intervene, and abuse of process claims against Detective Morano should be dismissed because (1) there is no stand-alone constitutional right to an adequate investigation under the Due Process Clause; (2) Detective Morano had no realistic opportunity to intervene and prevent the excessive force alleged by Plaintiff; and (3) there was no issuance of legal process by Detective Morano.  (Defs.' Mem. 8–11.)

Plaintiff does not address Defendants' arguments for dismissal of these claims against Detective Morano.  Plaintiff instead argues that Detective Morano denied Plaintiff access to the information she needed to pursue legal action by way of a "cover up," and seeks leave to amend

her Amended Complaint to "more clearly articulate the facts" and "more clearly fram[e] her constitutional access to the courts claim."  (Pl.'s Opp'n 12–14.)

Rule 15 of the Federal Rules of Civil Procedure provides that "[l]eave to amend should be 'freely give[n] . . . when justice so requires,' but 'should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party[.]'"  *Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (second and third alterations in original) (first quoting Fed. R. Civ. P. 15(a)(2); and then quoting *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008)); *see also Kainz v. Bernstein*, 841 F. App'x 249, 253 (2d Cir. 2020) (noting that leave to amend should be freely given).

The Court grants Plaintiff leave to amend the Amended Complaint as to the access to the courts claim against Detective Morano.  *See Caren v. Collins*, 696 F. App'x 19, 22 (2d Cir. 2017) ("[D]ismissals for insufficient pleadings are ordinarily with leave to replead." (quoting *Stern v. Gen. Elec. Co.*, 924 F.2d 472, 477 (2d Cir. 1991)); *Woo Hee Cho v. Oquendo*, No. 16-CV-4811, 2018 WL 9945701, at *12 (E.D.N.Y. Aug. 25, 2018) ("When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." (quoting *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999))); *see also Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 264 (S.D.N.Y. 2020) (*sua sponte* granting leave to file a second amended complaint where plaintiff could provide missing facts necessary to support its claims); *Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc.*, No. 17-CV-6851, 2019 WL 3802178, at *4 (S.D.N.Y. Aug. 13, 2019).

**d.   Plaintiff's abuse of process and failure to intervene claims against Officer
Lech**

Defendants argue that the abuse of process and failure to intervene claims against Officer

Lech should be dismissed because (1) there is no federal claim for failing to take a police report;

(2) Officer Lech did not issue any process; and (3) Officer Lech did not have a realistic

opportunity to intervene and prevent the alleged excessive force.  (Defs.' Mem. 11–12.)

Plaintiff does not address Defendants' arguments in support of the motion to dismiss the

abuse of process and failure to intervene claims against Officer Lech.  Instead, Plaintiff argues

that Officer Lech denied Plaintiff due process through his arbitrary refusal to modify the police

report taken after the automobile accident, which included statements Plaintiff made when she

was semi-conscious.  (Pl.'s Opp'n 15–16.)  In support, Plaintiff contends that Officer Lech

infringed Plaintiff's right to "have the report . . . corrected" to include truthful facts and

information and "obstruct[ed] Plaintiff's ability to pursue her claims and actions."  (*Id.* at 15.)

Because Plaintiff does not respond to Defendants' arguments in support of the motion to

dismiss the abuse of process and failure to intervene claims against Officer Lech, the Court

dismisses these claims as abandoned by Plaintiff.  *See BYD Co. Ltd. v. VICE Media LLC*, 531 F.

Supp. 3d 810, 819 (S.D.N.Y. 2021) ("[The] [p]laintiffs' failure to oppose [d]efendants' specific

argument in a motion to dismiss is deemed waiver of that issue." (quoting *Kao v. Brit. Airways,

PLC*, No. 17-CV-232, 2018 WL 501609, at *5 (S.D.N.Y. Jan. 19, 2018))), *aff'd*, No. 21-1097,

2022 WL 598973 (2d Cir. Mar. 1, 2022); *Levy v. Maggiore*, 48 F. Supp. 3d 428, 452 (E.D.N.Y.

2014) ("[The] [p]laintiff does not respond to this argument and the [c]ourt therefore construes

[p]laintiff's failure to respond as an abandonment of this claim.").

In addition, the Court find that Plaintiff's due process claim against Officer Lech fails on

16

its merits.[9]  To state a claim for substantive due process, a plaintiff must allege that: (1) he "has

been deprived of a protected interest in 'property' or 'liberty'" and (2) "the deprivation 'is so

egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"

*Mullen v. City of Syracuse*, 582 F. App'x 58, 60 (2d Cir. 2014) (first quoting *Am. Mfrs. Mut. Ins.*

*Co. v. Sullivan*, 526 U.S. 40, 59 (1999); and then quoting *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir.

2005)); *see Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022) ("[T]o determine whether government

conduct infringes on a substantive due process right, [courts] first identify the 'constitutional

right at stake' or the 'deprivation of property' interest at issue . . . , [and] then assess whether the

government's alleged conduct shocks the conscience." (first quoting *Kaluczky v. City of White*

*Plains*, 57 F.3d 202, 211 (2d Cir. 1995); and then citing *Velez*, 401 F.3d at 93)); *Knox v. Town of*

*Southeast*, 599 F. App'x 411, 413 (2d Cir. 2015) ("To establish a substantive due process claim,

a plaintiff must demonstrate a deprivation of a protected property interest 'so egregious, so

outrageous, that it may fairly be said to shock the contemporary conscience.'" (quoting *Velez*,

401 F.3d at 93)).

     "[T]he threshold inquiry in a substantive due process analysis is whether the property

interest claimed rises to the level of a property interest cognizable under the substantive Due

Process Clause." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 132 (2d Cir. 1998);

*see 13391 Broadway LLC v. Vill. of Alden*, No. 19-CV-882, 2020 WL 7028601, at *13

(W.D.N.Y. Nov. 30, 2020) (dismissing substantive due process claim where plaintiff did not

have an enforceable property interest).  Property interests "may take many forms." *Bd. of*

*Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972).  "Property interests protected by

---

[9]  Although Plaintiff alleges a due process claim in the Amended Complaint, it is unclear whether she alleges it against Officer Lech.  (*See generally* Am. Compl. ¶¶ 80–85.)  The Court nevertheless addresses this claim.

due process are neither created nor defined by the Constitution[,] '[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Martz v. Inc. Vill. of Valley Stream*, 22 F.3d 26, 29 (2d Cir. 1994) (quoting *Bd. of Regents*, 408 U.S. at 577); *Calvey v. Town Bd. of North Elba*, No. 20-CV-711, 2021 WL 1146283, at *9 (N.D.N.Y. Mar. 25, 2021) (quoting *Martz*, 22 F.3d at 29); *see Lipsman v. Cortes-Vazquez*, No. 21-CV-4631, 2021 WL 5827129, at *2 (S.D.N.Y. Dec. 7, 2021) (dismissing substantive due process claims where plaintiff failed "to identify any valid liberty or property interest"). "[T]he duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion. . . . That discretion precludes any 'legitimate claim of entitlement' to a police investigation." *Harrington v. County of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756, 760 (2005))).

Plaintiff fails to allege a property interest.  Because Officer Lech has discretion over the investigation of the police report, Plaintiff lacks any legitimate claim of entitlement sufficient to establish a property interest for the purposes of a substantive due process claim.[10]  *See Harrington*, 607 F.3d at 35–36 (holding that the plaintiff lacks a legitimate claim of entitlement because law enforcement has significant discretion in its investigations); *Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 228 (E.D.N.Y. 2021) ("[A] benefit is not a protected

---

[10]  The police report at issue, taken when Plaintiff arrived at Jamaica Hospital immediately after her accident, also pertains only to events and information prior to Plaintiff's contact with any of the other officers, and before any alleged mistreatment of Plaintiff by Officers Ortiz and Insignares.  Plaintiff has not made a showing of how inaccurate information in that police report would "obstruct Plaintiff's ability to pursue her claims and actions in this matter" as to the injuries allegedly caused by Officers Ortiz and Insignares.  (Pl.'s Opp'n 15.)

entitlement if government officials may grant or deny it in their discretion." (citing *Town of Castle Rock*, 545 U.S. at 756)).

Moreover, Plaintiff fails to state a claim for substantive due process because she does not allege that Officer Lech's refusal to modify the police report was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Knox*, 599 F. App'x at 413 (quoting *Velez*, 401 F.3d at 93).  Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit . . . [substantive due process] standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority."  *Harlen Assocs. v. Inc. Vill. Of Mineola*, 273 F.3d 494, 505 (2d Cir. 2001) (quoting *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)); *Natale*, 170 F.3d at 262 ("For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'" (collecting cases)); *Phillips v. County of Orange*, 894 F. Supp. 2d 345, 381 (S.D.N.Y. 2012) ("At most, [the plaintiffs] have claimed that [d]efendants were negligent in their handling of the abuse investigation, but they have not alleged sufficient facts to support an inference that [the defendants'] acts were malicious, such that their actions could 'shock the conscience.'" (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 276 (2d Cir. 2011))).  The government must have taken an "action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense."  *Cunney v. Bd. of Trs. of Vill. of Grand View*, 660 F.3d 612, 626 (2d Cir. 2011) (citations omitted).  "It is not enough that the government act be 'incorrect or ill-advised;' it must be 'conscience-shocking.'"  *Cox*, 654 F.3d at 275 (quoting *Kaluczky*, 57 F.3d at 211); *see also Cunney*, 660 F.3d at 626 (noting that substantive due process does not apply to "government action that is incorrect or ill

advised" (quoting *Kaluczky*, 57 F.3d at 211)); *Phillips*, 894 F. Supp. 2d at 379 ("Conduct that is

merely 'incorrect or ill-advised' is insufficient to state a claim." (quoting *Cox*, 654 F.3d at 275)).

"Only the most egregious official conduct can be said to be arbitrary in the constitutional sense

and therefore unconstitutional." *Cox*, 654 F.3d at 275 (quoting *Tenenbaum v. Williams*, 193 F.3d

581, 600 (2d Cir. 1999)).

Officer Lech's refusal to modify the police report was not so egregious, outrageously

arbitrary, or conscience-shocking as to constitute gross abuse of governmental authority. *See*

*Mamot v. Geico Car Ins.*, No. 21-CV-6717, 2021 WL 4443124, at *3 (S.D.N.Y. Sept. 27, 2021)

("The 'filing of a false police report is not itself a constitutional violation, even when the report

is the result of an intentional conspiracy among police officers to cover up police misconduct.'"

(citation omitted)); *Longinott v. Bouffard*, No. 11-CV-4245, 2012 WL 1392579, at *5 (S.D.N.Y.

Apr. 17, 2012) ("[T]he Supreme Court has repeatedly emphasized that only the most egregious

official conduct can be said to violate substantive due process." (citing *County of Sacramento v.*

*Lewis*, 523 U.S. 833, 846 (1998))).

Accordingly, the Court grants Defendants' motion and (1) dismisses Plaintiff's abuse of

process and failure to intervene claims against Officer Lech as abandoned, and (2) dismisses

Plaintiff's substantive due process claim against Officer Lech for failure to state a claim.[11]

---

[11] Plaintiff's failure to intervene claims also fails because Plaintiff only contacted Officer
Lech for the purpose of revising her police report about her being struck by an automobile. This
sole interaction occurred over "a month" after the alleged incident with Officers Ortiz and
Insignares on October 22, 2018, (Am. Compl. ¶ 49), and therefore cannot form the basis of an
alleged "opportunity to intervene on the cover up and extension of the abuse and unreasonable
acts of Defendants Officers Ortiz and Insignares," (*id.* ¶ 73). Thus, Officer Lech did not have a
reasonable opportunity to intervene in the actions of any of the Defendants. *See Ekukpe v.*
*Santiago*, 823 F. App'x 25, 32 (2d Cir. 2020) ("Although '[i]t is widely recognized that all law
enforcement officials have an affirmative duty to intervene to protect the constitutional rights of
citizens from infringement by other law enforcement officers in their presence,' an officer may

e.   **Municipal liability**

Defendants argue that Plaintiff's municipal liability claim against the City should be dismissed because (1) it is boilerplate and conclusory; (2) it refers to a single incident that is the result of actions by officers who are below the policy-making level; (3) it does not plausibly allege a persistent and widespread practice from which constructive knowledge of policymakers can be inferred; and (4) on a failure to train theory, Plaintiff's allegations do not meet the "deliberate indifference" standard.  (Defs.' Mem. 12–17.)

Plaintiff argues that the Amended Complaint "distinctly set forth plausible allegations for the failure to intervene [claim] and the *Monell* claim asserting that '[the] City and NYPD developed and maintained policies and/or customs exhibiting deliberate indifference to the constitutional rights of persons in [their] custody, which policies and/or customs caused the violation of [Plaintiff's] rights.'"  (Pl.'s Opp'n 17.)  In addition, "[i]t was the policy and/or custom of [the City] and NYPD to fail to take the steps to discipline, train, supervise or otherwise correct the improper, illegal conduct of the [I]ndividual Defendants in this and in similar cases involving misconduct."  (*Id.*)

To establish a municipal liability claim, a plaintiff is required to plead and prove three elements: "(1) an official policy or custom that (2) cause[s] [the plaintiff] to be subjected to (3) a denial of a constitutional right."  *Torcivia v. Suffolk County*, 17 F.4th 342, 355 (2d Cir. 2021)

---

not be held liable unless he had a 'realistic opportunity to intervene to prevent the harm from occurring.'" (alteration in original) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994))); *see also McGrier v. City of New York*, 849 F. App'x 268, 272 (2d Cir. 2021) (holding that "no reasonable jury could conclude from [the] record that [the officer] had a realistic opportunity to intervene to prevent the use of force by other officers" where he was not "in a position to prevent other officers from striking [the plaintiff]"); *Morris v. City of New York*, No. 14-CV-1749, 2015 WL 1914906, at *5 (E.D.N.Y. Apr. 27, 2015) (holding that non-arresting officers whom the plaintiff encountered at the precinct after an arrest did not have a realistic opportunity to intervene in the alleged false arrest).

(quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)); *Lucente v. County of*

*Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (same); *see also Frost v. N.Y.C. Police Dep't*, 980 F.3d

231, 257 (2d Cir. 2020) ("To establish liability under *Monell*, a plaintiff must show that he

suffered the denial of a constitutional right that was caused by an official municipal policy or

custom." (quoting *Bellamy v. City of New York*, 914 F.3d 727, 756 (2d Cir. 2019))).  A plaintiff

can establish an official policy or custom by showing any of the following: (1) a formal policy

officially endorsed by the municipality; (2) actions or decisions made by municipal officials with

decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom

of which policymakers must have been aware; or (4) a failure by policymakers to properly train

or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to

the rights of the plaintiff and others encountering those subordinates.  *See O'Kane v. Plainedge*

*Union Free Sch. Dist.*, 827 F. App'x 141, 143 (2d Cir. 2020) (finding that failure to "take

appropriate action to prevent or sanction violations of constitutional rights" amounted to

deliberate indifference (quoting *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012)));

*Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy

officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d

Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d

159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones*, 691 F.3d at

81 (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

A failure to "supervise city employees may constitute an official policy or custom if the

failure amounts to 'deliberate indifference' to the rights of those with whom the city employees

interact."  *Wray*, 490 F.3d at 195 (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

In addition, "municipal inaction such as the persistent failure to discipline subordinates who

violate civil rights could give rise to an inference of an unlawful municipal policy of ratification

of unconstitutional conduct within the meaning of *Monell*." *Batista v. Rodriguez*, 702 F.2d 393,

397–98 (2d Cir. 1983) (collecting cases); *McDonald v. City of Troy*, 542 F. Supp. 3d 161, 174

(N.D.N.Y. 2021) ("Policies can be 'pronounced or tacit,' and can take the form of 'either action

or inaction.'" (quoting *Lucente*, 980 F.3d at 297)); *see Savarese v. City of New York*, 547 F.

Supp. 3d 305, 354 (S.D.N.Y. 2021) ("Inaction can rise to the level of a municipal policy 'where

a local government is faced with a pattern of misconduct and does nothing, compelling the

conclusion that the local government has acquiesced in or tacitly authorized its subordinates'

unlawful actions.'" (quoting *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007))).  To prove

deliberate indifference, the plaintiff must show "that the need for more or better supervision to

protect against constitutional violations was obvious."  *Outlaw v. City of Hartford*, 884 F.3d 351,

373 (2d Cir. 2018) (citations omitted); *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir.

1995) (same); *Buari v. City of New York*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) (same).

"An obvious need may be demonstrated through proof of repeated complaints of civil rights

violations."  *Vann*, 72 F.3d at 1049.  In addition, the municipality's deliberate indifference can be

"inferred if [prior] complaints of misconduct are followed by no meaningful attempt on the part

of the municipality to investigate or to forestall further incidents."  *Id.*; *see Okin v. Vill. of*

*Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009) ("[D]eliberate indifference

may be inferred if the complaints are followed by no meaningful attempt on the part of the

municipality to investigate or to forestall further incidents." (alteration in original) (quoting

*Vann*, 72 F.3d at 1049)).  "Whether or not the claims had validity, the very assertion of a number

of such claims put the City on notice that there was a possibility that its police officers had used

excessive force."  *Vann*, 72 F.3d at 1049 (alteration in original) (first citing *Ricciuti v. N.Y.C.*

*Transit Auth.*, 941 F.2d 119,123 (2d Cir. 1991); and then quoting *Fiacco v. City of Rensselaer*, 783 F.2d 319, 328 (2d Cir. 1986)).

      Plaintiff fails to plead sufficient factual allegations to state a plausible claim that there is a widespread or well-documented custom of false statements and testimony by the NYPD. Plaintiff's conclusory allegations do not contain any facts or identify any specific instances of purported misconduct that would demonstrate a policy or custom officially endorsed by the municipality that is relevant to this claim.  *See Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) (dismissing the plaintiff's claims for failing to allege the existence of a municipal policy because "the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference") (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995))); *Cuevas v. City of New York*, No. 07-CV-4169, 2009 WL 4773033, at *4 (S.D.N.Y. Dec. 7, 2009) (dismissing municipal liability claims because "[b]aldly asserting that [the] [p]laintiff's injuries are the result of the City's policies does not show [the] [c]ourt what the policy is or how that policy subjected [the] [p]laintiff to suffer the denial of a constitutional right").[12]

      Because Plaintiff alleges only general and unrelated assertions, Plaintiff has not alleged facts insufficient to establish that the practice is so persistent and widespread that it constitutes a

---

[12]  Plaintiff also fails to show that the officers' actions were made by municipal officials with decision-making authority.  There are no factual allegations to support an inference that any of the officers involved in the arrest possessed the authority to make policy decisions.  *Compare City of Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985) (plurality opinion) (holding that an unjustified shooting by a police officer cannot, without more, be thought to result from official policy), *with Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (holding that a county sheriff and a county officer could establish county policy because they had a deliberate choice to follow a course of action from among various alternatives to establish final policy with respect to the subject matter in question); *see Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (finding that the sheriff was a county's final policymaking official with respect to the conduct of his staff members).

custom.  (Pl.'s Opp'n 17, 19 (alleging "incidents where [d]efendants have in the past abused and mistreated" civilians and a "pattern . . . that has so become part of the culture of the NYPD")); *see Demosthene v. City of New York*, No. 18-CV-1358, 2019 WL 181305, at *9 (E.D.N.Y. Jan. 10, 2019) (holding that allegations of an unconstitutional pattern and practice premised on dozens of other federal lawsuits fall short of a municipal liability claim because those complaints are premised on a different set of factual allegations).

  Finally, there are no allegations that suggest that policymakers failed to properly train or supervise their subordinates such that they exercised "deliberate indifference" to Plaintiff's rights.  Plaintiff fails to identify any specific deficiency in the city's training program that could have caused the alleged constitutional deprivation.  *See Shaheed v. City of New York*, No. 14-CV-7424, 2017 WL 3055040, at *8 (S.D.N.Y. July 17, 2017) (dismissing a municipal liability claim because, in part, the fact that an individual officer "may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program" (quoting *City of Canton*, 489 U.S. at 390–91)); *Cuevas*, 2009 WL 4773033, at *3 (dismissing a municipal liability claim because plaintiff failed to "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused the constitutional deprivation'" (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir. 2004))).

  Accordingly, Plaintiff fails to allege a municipal liability claim but the Court grants Plaintiff leave to amend the Amended Complaint as to this claim.  *See Caren*, 696 F. App'x at 22; *Woo Hee Cho*, 2018 WL 9945701, at *12.

**f.   Leave to amend**

The Court grants Plaintiff leave to file a second amended complaint to attempt to replead her claims against Detective Morano and a municipal liability claim.  Any second amended complaint must be filed within thirty days of the date of this Memorandum and Order.  A second amended complaint will completely replace the Amended Complaint and must stand on its own without reference to the Amended Complaint and must contain all of the claims Plaintiff seeks to pursue.  The second amended complaint must be captioned "Second Amended Complaint" and bear the same docket number as this Memorandum and Order.  If Plaintiff elects not to file a second amended complaint or fails to file a second amended complaint within thirty days of this Memorandum and Order, the Court will dismiss the claims against Detective Morano and the City.

## III.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion in part and denies it in part.  The Court (1) denies the motion as to Plaintiff's claims against Officers Ortiz and Insignares; (2) grants the motion as to Plaintiff's claims against the NYPD, Detective Morano, Officer Lech, and the City; and (3) grants leave to amend as to Plaintiff's claims against Detective Morano and the City.

Dated:  September 12, 2022
       Brooklyn, New York

SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge